No. 25-1020

In the United States Court of Appeals
for the Fourth Circuit

JEFFERSON GRIFFIN,

*Petitioner-Appellee,*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

**RESPONDENT-APPELLANT'S MOTION TO STAY AND
REQUEST FOR AN IMMEDIATE ADMINISTRATIVE
STAY PENDING RULING ON STAY MOTION**

Mary Carla Babb
Terence Steed
Special Deputy Attorneys General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

*Counsel for Respondent-Appellant*

Below, the district court erroneously remanded this case to a

North Carolina state court.  In so doing, the court incorporated by

reference its order in *Jefferson Griffin v. North Carolina State Board of*

*Elections, et al.,* Case No. 5:24-CV-00724-M (E.D.N.C.) ("*Griffin I*").  *See*

Ex. 1.  The district court's order for the instant case, in relevant part,

stated:

> The court has reviewed the filings in this case and finds that the
> factual and legal subject matter of this action is substantially
> identical to that in *Jefferson Griffin v. North Carolina State Board*
> *of Elections, et al.,* Case No. 5:24-CV-00724-M. Having concluded
> in that case that abstention and remand under *Burford* and
> *Louisiana Power* is warranted, *see* Case No. 5:24-CV-00724-M, DE
> 50, the court finds that conclusion operates with equal force here.
> Accordingly, the court sua sponte remands this matter to the
> Superior Court for Wake County.

*Jefferson Griffin v. North Carolina State Board of Elections*, No. 5:24-

cv-00731-M (E.D.N.C.) ("*Griffin II*"), Ex. 1 at 1.

Earlier today, the North Carolina State Board of Elections filed a

motion seeking a stay of the district court's order in *Griffin I* that

remanded that case to the North Carolina Supreme Court.  *See* Mot. to

Stay, *Jefferson Griffin v. North Carolina State Board of Elections, et al.*,

Case Nos. 25-1018, 25-1019 (4th Cir.) (Dkt. 10).

The Board respectfully incorporates by reference its arguments in

2

its prior brief.  Specifically, the Board is likely to succeed on the merits of its appeal—the Board properly removed this case under the civil-rights removal statute, and the abstention doctrines that the district court relied on below should not be applied to this case.  *See* Dkt. 10 at 12-21.  The Board will also be irreparably harmed absent a stay, as the district court's improper remand could frustrate this appeal before it is properly resolved.  *See* Dkt. 10 at 21-24.  Further, a stay would impose no harm on Plaintiffs, as the federal courts have jurisdiction to consider the relief Plaintiffs have sought.  *See* Dkt. 10 at 24.  Finally, the public interest overwhelmingly favors a stay, as Plaintiffs seek to cancel the ballots of tens of thousands of votes cast by lawfully eligible voters who complied with the voting rules in place at the time of election.  *See* Dkt. 10 at 25.

The Board seeks this relief in the first instance in this Court because moving first in the district court was impracticable and because the district court has already "failed to afford the relief requested" by the Board here.  *See* Fed. R. Civ. P. 8 (a)(2)(A)(i)-(ii).  Within minutes after the remand order was issued yesterday evening, the district court certified its remand order to state court and closed the federal case

docket. That same evening, in *Griffin I* and *Griffin II* respectively,
Petitioner filed motions for immediate injunctive relief in both the
North Carolina Supreme Court and the Superior Court for Wake
County. This morning, the day after the district court issued its
remand order, the Wake County Superior Court issued an order in this
case indicating that an ex parte order against the Board may have been
entered the previous evening without notice to the Board. Ex. 2. The
superior court therefore directed that the ex parte order not be entered,
and set a hearing to occur no later than January 10, 2025. Ex. 2. Also
this morning, the North Carolina Supreme Court in *Griffin I* issued an
order granting a temporary stay of the certificate of election and setting
an expedited briefing schedule. *Griffin I*, Order at 1-2, No. 320P24
(N.C. Jan. 7, 2025). Later today, the Court released additional opinions
on the order, including separate dissents from Justice Earls and Justice
Dietz. Ex. 3. Given these circumstances, it would have been
impracticable to seek a stay of the district court's remand order.

For the reasons stated, and those articulated in its brief in *Griffin
I*, the Board respectfully asks this Court to exercise its supervisory
power over the district court and direct it to retrieve the action

4

forthwith from the state court. In addition, the Board requests that the Court stay the remand order pending appeal and to issue an immediate administrative stay pending a ruling on the stay motion.

Petitioner's counsel represented to undersigned that Petitioner opposes this motion and request and wishes to file responses in opposition.

This the 7th day of January, 2025.

<u>/s/ Mary Carla Babb</u>
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov

*Counsel for Respondent-Appellant*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this motion complies with Fed.

R. App. P. 27(d)(2)(C), 32(a)(5), 32(g)(1), and Local Rule 27.

This the 7th day of January, 2025.

/s/ Mary Carla Babb
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

This the 7th day of January, 2025.

<u>/s/ Mary Carla Babb</u>
Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
MCBabb@ncdoj.gov

## APPENDIX TO MOTION

## INDEX

| No. | Exhibit | Page |
|-----|---------|------|
| 1 | District Court's Remand Order filed in *Griffin v. N.C. State Board of Elections,* No. 5:24-CV-00731 (E.D.N.C. Jan. 6, 2025) ("*Griffin II*") [D.E. 24] | 1 |
| 2 | N.C. Superior Court Order filed in *Griffin v. N.C. State Board of Elections,* No. 24CV040619-910 (Jan. 7, 2025) | 3 |
| 3 | N.C. Supreme Court Amended Order filed in *Griffin v. N.C. State Board of Elections,* No. 320P24 (N.C. Jan. 7, 2025) | 5 |

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CV-00731-M

| | |
|---|---|
| JUDGE JEFFERSON GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>Defendant. | ORDER |

This matter comes before the court on Plaintiff Jefferson Griffin's motions for temporary restraining order [DE 1-5; DE 1-9; DE 1-13]. The court has reviewed the filings in this case and finds that the factual and legal subject matter of this action is substantially identical to that in *Jefferson Griffin v. North Carolina State Board of Elections, et al.*, Case No. 5:24-CV-00724-M. Having concluded in that case that abstention and remand under *Burford* and *Louisiana Power* is warranted, *see* Case No. 5:24-CV-00724-M, DE 50, the court finds that conclusion operates with equal force here. Accordingly, the court sua sponte remands this matter to the Superior Court for Wake County.

SO ORDERED this ___6th___ day of January, 2025.

*Richard E. Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

1

# EXHIBIT 2

- 4 -

FILED
DATE: January 7, 2025
TIME: 01/07/2025 1:15:03 PM
WAKE COUNTY
SUPERIOR COURT JUDGES OFFICE
BY: K. Myers

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV040619-910

| | |
|---|---|
| JEFFERSON GRIFFIN, | |
| Petitioner, | |
| v. | **ORDER** |
| NORTH CAROLINA STATE BOARD OF ELECTIONS, | |
| Respondent. | |

This matter came before the undersigned for consideration of Petitioner's ex parte Amended and Verified Motion for Temporary Restraining Order, Preliminary Injunction, and/or Stay. After review, the undersigned signed an Order on January 7, 2025, granting Petitioner's Motion.

Upon further consideration, the Court became concerned that neither the Respondent nor Respondent's attorneys received appropriate notice of the Motion, as required by Local Rules and Rule 65 of the Rules of Civil Procedure.

Therefore, the Order signed on January 7, 2025, by the undersigned is hereby withdrawn and the Wake County Clerk of Superior Court is directed to not file the Order. The Court further orders that the Amended and Verified Motion for Temporary Restraining Order, Preliminary Injunction, and/or Stay be set for hearing by the Trial Court Administrator's Office prior to close of business on Friday, January 10, 2025.

So ORDERED on _____1/7/2025_____

_____
Cynthia K. Sturges
Superior Court Judge

# EXHIBIT 3

No. 320P24

## SUPREME COURT OF NORTH CAROLINA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

JEFFERSON GRIFFIN

v.

NORTH CAROLINA BOARD OF ELECTIONS

From N.C. Board of Elections

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED ORDER

On 18 December 2024, petitioner filed a petition for writ of prohibition and motion for temporary stay related to the 2024 election for a Seat 6 on the Supreme Court of North Carolina. Prior to filing a response or this Court taking action on petitioner's filings, respondent Board of Elections filed with this Court on 19 December 2024 a notice of removal of this action to the United States District Court for the Eastern District of North Carolina. On 6 January 2025, the United States District Court for the Eastern District of North Carolina remanded the matter to this Court.

Even though we received notice from the Board of Elections of its appeal of the order from the United States District Court for the Eastern District of North Carolina, in the absence of a stay from federal court, this matter should be addressed expeditiously because it concerns certification of an election.

- 7 -

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Order of the Court*

Therefore, petitioner's motion for temporary stay is allowed, and the Court upon its own motion sets the following expedited briefing schedule concerning the writ of prohibition:

1.  Petitioner shall file his brief on or before 14 January 2025;

2.  Respondent shall file its response on or before 21 January 2025; and

3.  Petitioner shall file his reply brief on or before 24 January 2025.

By order of the Court in Conference, this the 7th day of January 2025.

/s/ Allen, J.
For the Court

Riggs, J., recused

Justices Earls and Dietz dissent.

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 7th day of January 2025.



Grant E. Buckner
Clerk of the Supreme Court

Copy to:
Mr. Troy D. Shelton, Attorney at Law, For Griffin, Jefferson - (By Email)
Ms. Sarah G. Boyce, Deputy Attorney General, For State Board of Elections - (By Email)

- 8 -

G<small>RIFFIN</small> v. S<small>TATE</small> B<small>OARD OF</small> E<small>LECTIONS</small>

No. 320P24

*Order of the Court*

Ms. Mary Carla Babb, Special Deputy Attorney General, For State Board of Elections - (By Email)
Mr. Terrence Steed, Special Deputy Attorney General, For State Board of Elections - (By Email)
Mr. Craig D. Schauer, Attorney at Law, For Griffin, Jefferson - (By Email)
Mr. W. Michael Dowling, Attorney at Law, For Griffin, Jefferson - (By Email)
Mr. Philip Thomas, Attorney, For Griffin, Jefferson - (By Email)
Mr. Paul Mason Cox, Special Deputy Attorney General, For State Board of Elections - (By Email)
Mr. Raymond M. Bennett, Attorney at Law - (By Email)
Mr. Samuel B. Hartzell, Attorney at Law - (By Email)
Mr. John R. Wallace, Attorney at Law - (By Email)
Ms. Shana L. Fulton, Attorney at Law - (By Email)
Mr. William A. Robertson, Attorney at Law - (By Email)
Mr. James W. Whalen, Attorney at Law - (By Email)
West Publishing - (By Email)
Lexis-Nexis - (By Email)

No. 320P24 – Griffin v. State Board of Elections

Justice ALLEN concurring.

I write separately to stress that the Court's order granting Judge Griffin's motion for temporary stay should not be taken to mean that Judge Griffin will ultimately prevail on the merits. It seems necessary to make this point because the opinions filed by my dissenting colleagues could give the opposite impression to readers unfamiliar with the intricacies of appellate procedure. By allowing the motion, the Court has merely ensured that it will have adequate time to consider the arguments made by Judge Griffin in his petition for writ of prohibition. As Judge Griffin himself concedes in his filings with this Court, in the absence of a stay, the State Board of Elections will certify the election, thereby rendering his protests moot.

No. 320P24 – Griffin v. State Board of Elections

Justice EARLS dissenting.

I dissent on the grounds that the standard for a temporary stay has not been met here, where there is no likelihood of success on the merits and the public interest requires that the Court not interfere with the ordinary course of democratic processes as set by statute and the State Constitution. Petitioner Judge Jefferson Griffin's motion for a temporary stay is procedurally improper, as he has failed to follow the lawful process for appealing a final decision on an election protest, instead rushing to the very Court on which he seeks membership for validation of his extraordinary legal arguments.

Moreover, even if the filing were procedurally proper, his motion for a temporary stay should be denied because he has failed to meet the standard for granting preliminary relief. Simply put, the laws and the Constitution of this State provide for the proper execution of the will of the voters following an election, with the issuance of a certificate of election duly following the procedures set by law. Free and fair elections demand nothing less, and there is a substantial public interest served by following the rule of law. For this Court to intervene in an unprecedented way to stop that process, where there is no underlying merit to the contention that some 60,000 citizens who registered to vote and voted should have their votes thrown out, there must be a strong showing of the likelihood of success on the merits. There is no such showing here. Therefore, I dissent.

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

## I.   Judge Griffin's Request for a Temporary Stay Is Procedurally Improper

Judge Griffin invokes North Carolina Rule of Appellate Procedure 23(e) in his application for a temporary stay. Under Rule 23(e), a party may seek "an order temporarily staying enforcement or execution of the judgment, order or other determination pending decision by the court upon the petition for supersedeas." N.C.R. App. P. 23(e) (2023). Griffin asserts that Rule 23(e)'s allowance of a stay for a *petition of writ of supersedeas* should be extended to encompass his *petition for writ of prohibition*—two completely separate requests for relief—but he cites no support for such a maneuver in the Rules of Appellate Procedure.

Assuming that the Rules of Appellate Procedure supported his standalone motion for temporary stay, Griffin still has not met his burden to show he is entitled to it, since his rights can be vindicated through existing legal channels. *See A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 401 (1983); *Pruitt v. Williams*, 288 N.C. 368, 372 (1975) (noting that a party seeking a stay bears the burden to show their entitlement to it). A temporary stay is used "to preserve the status quo of the parties during litigation." *A.E.P. Industries, Inc.*, 308 N.C. at 401 (cleaned up) (quoting *Investors, Inc. v. Berry*, 293 N.C. 688, 701 (1977)); *cf. Huskins v. Yancey Hospital, Inc.*, 238 N.C. 357, 361 (1953) (explaining that a court must "necessarily refuse[ ] an interlocutory injunction if the plaintiff fails to make out an apparent case for the issuance of the writ"). In general, granting such a stay is proper only "if a plaintiff is likely to sustain irreparable loss" without it—in other words, that "issuance is

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

necessary for the protection of a plaintiff's rights during the course of litigation." *Investors, Inc.*, 293 N.C. at 701; *accord Bd. of Provincial Elders v. Jones*, 273 N.C. 174, 182 (1968). That inquiry, in turn, looks to "whether the remedy sought by the plaintiff is the most appropriate for preserving and protecting its rights or whether there is an adequate remedy at law." *A.E.P. Industries, Inc.*, 308 N.C. at 406.

Here, Griffin cannot show a threat of irreparable harm because state law provides a specific procedure, in a specific venue, by a specific timeline, for raising the exact challenges he asks this Court to resolve. *See* N.C.G.S. § 163-182.14 (2023). Specifically, for statewide judicial elections, "an aggrieved party has the right to appeal the final decision [of the State Board of Elections] to the Superior Court of Wake County within 10 days of the date of service." *Id.* at (b). After the final decision, the State Board shall issue the certification of the election "unless an appealing party obtains a stay of the certification from the Superior Court of Wake County within 10 days after the date of service." *Id.* The Superior Court of Wake County "shall not issue a stay of certification unless the petitioner shows the court that the petitioner has appealed the decision of the State Board of Elections, that the petitioner is an aggrieved party, and that the petitioner is likely to prevail in the appeal." *Id.* Simply put, state law provides that the Wake County Superior Court, not our Court, is to resolve these challenges, subject to the normal appeals process—all of which Griffin has disregarded in his insistence that we resolve the merits of his challenges in the first instance.

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

That further raises the question: why does Judge Griffin say he seeks relief in this Court instead of the court where he was supposed to file? His petition asserts that a stay and corresponding ruling on the merits is necessary because otherwise the case will be "improperly remov[ed] to federal court" and because "it will take considerable time before a remand motion is briefed and ruled on." But a party's apparent hope that they are more likely to get their way with a specific court, and quicker than they might through the appropriate channels, hardly meets the "irreparable harm" standard. The majority's special order does not explain why it finds its exercise of jurisdiction proper, notwithstanding a state statute expressly to the contrary, instead asserting that Griffin's action "concerns certification of an election."

## II.    Griffin Has Failed to Meet His Burden to Show He Likely Will Prevail on the Merits

Disregarding the importance of legal procedure, the majority today issued a nebulous "temporary stay related to the 2024 election" and ordered expedited briefing on the underlying merits of Griffin's challenge. This, too, is improper. Even assuming that our Court, instead of the Wake County Superior Court, were the proper place for an aggrieved party for judicial office to seek a stay of an election certification, Griffin has still failed to meet his burden to show that he is "likely to prevail in the appeal." *See* N.C.G.S. § 163-182.14(b).

- 14 -

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

To start, Griffin admits that one of his challenges, if successful, would not alter the outcome of the election given present vote totals. That challenge would affect the ballots of only 266 people, far fewer than Justice Allison Riggs's lead of 734 votes. *See In re Election Protests of Jefferson Griffin, Ashlee Adams, Frank Sossamon, and Stacie McGinn*, Decision and Order 3 (State Bd. of Elections, Dec. 13. 2024) [hereinafter Griffin Order]. The substance of that challenge is that there is an apparent conflict between a state law dating back to 2011, which permits individuals living overseas who are the descendants of North Carolina residents to vote in state elections, and the North Carolina Constitution. *See* UMOVA, SL 2011-182, N.C. Sess. Laws 687–97 (2011); N.C.G.S. § 163-258.2(1)(e) (2023). Entertaining Griffin's challenge to the constitutionality of a statute that has existed for over a decade, *after* an election has already occurred, and especially where it would not affect the outcome, is inappropriate to say the least. *Cf. Singleton v. Dep't of Health and Human Servs.*, No. 260PA22, 2024 WL 4524680 (per curiam) (N.C. Oct. 18, 2024) (noting the lawful procedure for a party to follow to contest the facial validity of a statute).

Griffin's second challenge is to the votes of 1,409 overseas voters, including military and armed services members, who allegedly did not provide copies of their photo identification with their absentee ballots. *See* Griffin Order, *supra*, at 3. He argues that these votes should not be counted, because of his interpretation of two state statutes.

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

Notably this challenge was the only one unanimously rejected by the State Board of Elections in its 13 December 2024 decision and order on appeal here. *See* Griffin Order, *supra*, at 39. The State Board explained that, since April 2023, through six separate elections, it has interpreted the two statutes as not requiring military and overseas-citizen voters covered by Article 21A to show a photocopy of photo identification or an ID Exception Form. *Id.* at 32, 37, 39. Neither Griffin nor the North Carolina Republican Party objected to this Rule during the administrative rulemaking process, nor did they challenge it under the traditional administrative or judicial procedure. *Id.* at 37. Indeed an agency appointed by General Assembly leadership approved the rule unanimously. *Id.* Whatever the merits of the statutory interpretation question, "We decline to grant [a party] extraordinary relief when they are responsible for their own predicament." *Kennedy v. N. Carolina State Bd. of Elections*, 905 S.E.2d 55, 57 (N.C. 2024) (mem.).

Griffin's final challenge is to exclude the votes of more than 60,000 North Carolinians because a state database lacked either a North Carolina drivers license number or the last four digits of a social security number for a registered voter. The legal and factual assumptions in this challenge are too many to count, let alone to show Griffin "is likely to prevail on appeal." *See* N.C.G.S. § 163-182.14(b). Here I will note only his extraordinary factual assumptions: nowhere in his more than 4,000 pages of filings with this Court does Griffin identify a single voter who actually possessed either number yet did not provide it when registering to vote, which must

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

be true for his challenge to bear fruit even under his own legal theory. *Cf* Griffin Order, *supra*, at 15, 17. Nor does Griffin identify a single voter who would not have been lawfully registered to vote absent an administrative technicality of a missing number in a state government database. Those factual omissions doom Griffin's challenge on this matter, because he has failed to show "probable cause to believe that a violation of election law or irregularity or misconduct has occurred," *see* N.C.G.S. § 163-182.10(a)(1), let alone one sufficient to change the outcome of the election at this late stage.

Even more fatal to the likelihood of success on this claim is the fact that at least twice before, as the State Board of Elections pointed out in its Order, this Court has rejected the proposition that a protest can be used to discount the ballots of eligible voters who did everything they were told to do to register to vote. *See Overton v. Mayor & City Comm'rs of Hendersonville,* 253 N.C. 306, 316 (1960); *Woodall v. W. Wake Highway Com.,* 176 N.C. 377, 388 (1918). That precedent instructs that alleged errors by election officials in the maintenance of voter databases or the processing of voter registration forms cannot be used to invalidate an otherwise eligible voter's ballot. That principle is especially applicable here, given that the State Board found that Griffin failed to properly serve his protests on the voters whose ballots he seeks to discard, as required by law. *Cf.* Griffin Order, *supra*, at 6–14.

At bottom, the timing of Griffin's claims speaks volumes about their substance. By waiting until after the votes were cast and the results tallied, Griffin seeks to

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Earls, J. dissenting*

retroactively rewrite the rules of the election to tilt the playing field in his favor. His filings amount to a broadside legal attack, raising a laundry list of statutory and constitutional objections to long-established election laws. These legal arguments rest on factual assumptions that he has failed to prove. These claims, sweeping as they are, could—and should—have been brought long before voters went to the polls. From the Court's indulgence of this sort of fact-free post-election gamesmanship, I dissent.

No. 320P24 – Griffin v. State Board of Elections

Justice DIETZ dissenting.

I would deny the petition and dismiss the stay request under our state's corollary to a federal election doctrine known as the "*Purcell* principle." *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). The *Purcell* principle recognizes that, as elections draw near, judicial intervention becomes inappropriate because it can damage the integrity of the election process. *See generally Merrill v. Milligan*, 142 S.Ct. 879, 880-81 (2022) (Mem.) (Kavanaugh, J., concurring) (collecting cases). We have acknowledged a state version of this doctrine in past cases. *See*, *e.g.*, *Pender Cnty. v. Bartlett*, 361 N.C. 491, 510 (2007).

In my view, the challenges raised in this petition strike at the very heart of our state's *Purcell* principle. The petition is, in effect, post-election litigation that seeks to remove the legal right to vote from people who lawfully voted under the laws and regulations that existed during the voting process. The harm this type of post-election legal challenge could inflict on the integrity of our elections is precisely what the *Purcell* principle is designed to avoid.

Now, to be fair, I believe some of these legal challenges likely have merit. This case, understandably, has drawn a tremendous amount of public attention. Nearly all of the press coverage and public discourse seems focused on Judge Griffin's challenge to the votes of around 60,000 people whose voter registration information lacked complete driver's license or social security information.

- 19 -

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Dietz, J., dissenting*

In my view, this portion of the argument is almost certainly meritless. I also do not view it, having read Judge Griffin's petition, as a central part of the argument.

Instead, the crux of Judge Griffin's legal claims are two state law arguments that appear to me quite likely to be meritorious. It is worth articulating them here because, meritorious as they may be, they still invoke *Purcell* issues.

First, the State Board of Elections decided to permit people living in foreign countries to vote in our state elections although these people (1) have never stepped foot in North Carolina and (2) informed the State Board of Elections that they have no intent to ever reside in our state. This decision by the Board appears to me to be quite plainly unconstitutional. Only residents of North Carolina can vote in our state elections. *See* N.C. Const. art. VI, § 2.

Of course, many people not currently living within the borders of our state might nevertheless be residents for voting purposes—for example, college students attending a school in another state, or military servicemembers stationed overseas. *See* N.C.G.S. § 163-57. But under our state constitution and corresponding election laws, people who admit that they have *never* resided in North Carolina and never *intend* to reside in North Carolina simply cannot vote in our state elections. *Id*. Remarkably, the State Board of Elections decided otherwise.

Second, the State Board of Elections decided that people living in foreign countries who want to vote in our state elections do not need to comply with our

- 20 -

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Dietz, J., dissenting*

State's voter ID law, although all voters living in North Carolina must do so. *See* 8 N.C. Admin. Code § 17.0109(d).

I do not have the time in this opinion for a deep dive into the Board's strained reasoning for this choice. Suffice it to say that this decision—which appears to rely on the bizarre view that voter ID is a means of "authenticating" a ballot, not identifying the human being who is voting—does not appear consistent with the text of the applicable state laws. *See* N.C.G.S. § 163-166.16 & -230.1(f1); N.C.G.S. § 163-239.

Moreover, the Board's decision is obviously inconsistent with the law's intent. One does not need a law degree to understand that people claiming to be registered North Carolina voters while mailing in absentee ballots *from a foreign country* are among the key groups of people that the General Assembly (and we the people in our state constitution) intended to be subject to our voter ID law. That law is designed to protect the integrity of our elections. It is certainly easier for foreign actors to meddle in an election from overseas. Exempting voters in foreign countries from voter ID requirements that apply to everyone else simply cannot be squared with the text of the law or the obvious legislative intent.

Having said all this, these two decisions by the State Board of Elections were not made in the context of Judge Griffin's election. They are contained in election rules already in effect when Judge Griffin's election took place. The voter ID issue stems from a regulation promulgated by the Board through an open process long

- 21 -
GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Dietz, J., dissenting*

before the election. *See* 8 N.C. Admin. Code § 17.0109(d). Likewise, the decision to register voters who have never resided in our state and never intend to reside here is based on the Board's public interpretation of a statute in effect since 2011. *See* Uniform Military and Overseas Voters Act, S.L. 2011-182, 2011 N.C. Sess. Laws 687, 687–89; State Board of Elections Mem. 2012-01 (Jan. 23, 2012).

Thus, in my view, these potential legal errors by the Board could have been— and should have been—addressed in litigation long before people went to the polls in November. As the Fourth Circuit recently observed, in the past few years "North Carolina has been flooded with dozens of challenges to the State's electoral regulations." *Sharma v. Hirsch*, 121 F.4th 1033, 1043 (4th Cir. 2024). Many of these challenges "are reasonably grounded in the law, and their gravity should not be understated." *Id*. But this constant litigation, although often important and laudable, "is not conducive to the most efficient administration of elections." *Id*.

This is the genesis of our state's *Purcell* principle. Because of the chaos that can emerge from repeated court-compelled changes to how we administer elections, at some point the rules governing an election must be locked in. As Justice Kavanaugh has observed, when "an election is close at hand, the rules of the road should be clear and settled." *Democratic Nat'l Comm v. Wisconsin State Legislature*, 141 S.Ct. 28, 31 (2020) (Mem.) (Kavanaugh, J., concurring). Knowing that these rules are fixed and will no longer change is essential to "giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election." *Id*. Taking

- 22 -

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Dietz, J., dissenting*

this concept one logical step further, once people are actually *voting* in the election, it is far too late to challenge the laws and rules used to administer that election. This is, in my view, a central concept of the *Purcell* principle.

Admittedly, the *Purcell* principle itself is a federal doctrine that only applies to federal courts. *Id.* But this Court has long acknowledged a state version of *Purcell* (although not always by name). *See Pender Cnty.*, 361 N.C. at 510; *see also Holmes v. Moore*, 382 N.C. 690, 691 (2022) (Mem.) (Newby, C.J., dissenting); *Harper v. Hall*, 382 N.C. 314, 319 (2022) (Mem.) (Barringer, J., dissenting). I believe this principle is a necessary part of our state law doctrine for the same reasons it is incorporated into federal law. Accordingly, I believe we must apply it, when appropriate, in state election litigation. This is one of those cases.

In sum, I would hold that the relief sought in the petition for a writ of prohibition comes too late. Although these challenges to our state's election laws and regulations might be meritorious, they are not ones that can change the rules of an election after the voters of our state already went to the polls and voted.

Permitting post-election litigation that seeks to rewrite our state's election rules—and, as a result, remove the right to vote in an election from people who already lawfully voted under the existing rules—invites incredible mischief. It will lead to doubts about the finality of vote counts following an election, encourage novel legal challenges that greatly delay certification of the results, and fuel an already troubling decline in public faith in our elections. I therefore believe our state version

GRIFFIN V. STATE BOARD OF ELECTIONS

No. 320P24

*Dietz, J., dissenting*

of the *Purcell* principle precludes the relief sought in the petition and respectfully

dissent from the Court's decision not to deny it outright.