No. 25-1020

# In the United States Court of Appeals for the Fourth Circuit

JEFFERSON GRIFFIN,

*Petitioner-Appellee,*

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS,

*Respondent-Appellant,*

*and*

ALLISON RIGGS,

*Intervenor-Respondent.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

**BRIEF OF PETITIONER-APPELLEE JEFFERSON GRIFFIN**

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
 *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
will@lkcfirm.com

*Counsel for Petitioner-Appellee*

# Table of Contents

Introduction...................................................................................................1

Statement of Jurisdiction .............................................................................3

Issues Presented ...........................................................................................3

Statement of the Case...................................................................................4

Summary of the Argument ..........................................................................7

Standard of Review ......................................................................................9

Argument.....................................................................................................10

    I.   The District Court Did Not Abuse Its Discretion When It
       Abstained and Remanded This Fundamentally State-Law
       Dispute. ...........................................................................................10

    II.  The District Court Lacked Removal Jurisdiction. ...........................16

       A.  Judge Griffin's petitions for judicial review could not be
          removed because they are not "civil action[s]." .........................16

       B.  Section 1441 does not support removal jurisdiction. ..................21

          1.  Never Residents...................................................................21

          2.  Incomplete Voter Registrations............................................23

          3.  Lack of Photo Identification for Overseas Voters................23

    III.  The Court Should Decline to Order the District Court to
       "Request" the Return of These Cases from the Superior
       Court of Wake County. .....................................................................24

Conclusion...................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. McVey,*
　　37 F.4th 89 (4th Cir. 2022) ............................................................ 9

*Burt v. Titlow,*
　　571 U.S. 12 (2013) ........................................................................ 12

*Capps v. Newmark S. Region, LLC,*
　　53 F.4th 299 (4th Cir. 2022) ........................................................ 11

*Chicago & N.W.R. Co. v. Whitton,*
　　80 U.S. 270 (1871) ........................................................................ 14

*City of Chicago v. Int'l Coll. of Surgeons,*
　　522 U.S. 156 (1997) ..........................................................8, 19, 20

*Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Com'rs of Town of Nags Head,*
　　265 S.E.2d 379 (N.C. 1980) .......................................................... 18

*Def. Distributed v. Platkin,*
　　55 F.4th 486 (5th Cir. 2022) ....................................................9, 26

*Fairfax Cnty. Redevelopment & Hous. Auth. v. W.M. Schlosser Co.,*
　　64 F.3d 155 (4th Cir. 1995) ..........................................17, 18, 19, 20

*First Penn-Pac. Life Ins. Co. v. Evans,*
　　304 F.3d 345 (4th Cir. 2002) ........................................................ 10

*Forty Six Hundred LLC v. Cadence Educ.,*
　　15 F.4th 70 (1st Cir. 2021) ............................................................ 24

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,*
463 U.S. 1 (1983) ........................................................................22, 23

*Frison v. Franklin Cnty. Bd. of Educ.,*
596 F.2d 1192 (4th Cir. 1979) ..........................................................19

*Griffin v. N.C. State Bd. of Elecs.,*
No. 24CV040619-910 (N.C. Sup. Ct.) .................................................6

*Griggs v. Provident Consumer Disc. Co.,*
459 U.S. 56 (1982) ..........................................................................27

*Gunn v. Minton,*
568 U.S. 251 (2013) ..........................................................................8

*Hennis v. Hemlick,*
666 F.3d 270 (4th Cir. 2012) ..............................................................9

*Jamison v. Wiley,*
14 F.3d 222 (4th Cir. 1994) .........................................................14, 15

*Johnson v. Collins Entm't Co.,*
199 F.3d 710 (4th Cir. 1999) ............................................................14

*Kirkpatrick v. Lenoir Cnty. Bd. of Educ.,*
216 F.3d 380 (4th Cir. 2000) ............................................................20

*Kolibash v. Comm. on Legal Ethics of W. Va. Bar,*
872 F.2d 571 (4th Cir. 1989) .......................................................14, 15

*In re Martin,*
861 F.2d 265, 1988 WL 109303 (4th Cir. 1988)................................27

*Matherly v. Las Vegas Valley Water Dist.,*
926 F. Supp. 990 (D. Nev. 1996) ......................................................17

*Mayor & City Council of Balt. v. BP P.L.C.,*
    31 F.4th 178 (4th Cir. 2022) ..................................................................10

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
    491 U.S. 350 (1989) ...............................................................................12

*Palumbo v. Waste Techs. Indus.,*
    989 F.2d 156 (4th Cir. 1993) ...........................................................7, 11

*Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    75 F. App'x 903 (4th Cir. 2003) ...........................................................11

*Phillips v. N.C. A&T State Univ.,*
    No. 1:09-cv-227, 2009 WL 5215377 (M.D.N.C. Dec. 28, 2009)....................19

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) .........................................................1, 3, 15, 16

*Rector v. N.C. Sheriffs' Educ. & Training Standards Comm'n,*
    406 S.E.2d 613 (N.C. App. 1991) ..........................................................18

*United States v. Flores-Granados,*
    783 F.3d 487 (4th Cir. 2015) ...............................................................16

*United States v. Lucero,*
    755 F. App'x 384 (5th Cir. 2018).......................................................9, 26

*United States v. McHugh,*
    528 F.3d 538 (7th Cir. 2008) ...............................................................26

*United States v. Olano,*
    507 U.S. 725 (1993) ...............................................................................22

*United States v. Sastrom,*
    96 F.4th 33 (1st Cir. 2024)....................................................................25

*United States v. Simms,*
    914 F.3d 229 (4th Cir. 2019) ...............................................................22

iv

*Wash. Gas Light Co. v. Prince George's Cnty. Council,*
711 F.3d 412 (4th Cir. 2013) .................................................................1

*Winkler v. N.C. State Bd. of Plumbing,*
843 S.E.2d 207 (N.C. 2020) ...........................................................8, 20

**Constitutional Provisions and Statutes**

N.C. Const. art. VI, § 2(1)......................................................................12

N.C. Const. art. VIII................................................................................12

N.C. Const. art. VI, § 3(1)......................................................................12

28 U.S.C. § 1291.......................................................................................3

28 U.S.C. § 1441.............................................................8, 14, 16, 17, 21, 28

28 U.S.C. § 1442...............................................................................8, 14

28 U.S.C. § 1443...................................................2, 8, 14, 16, 21, 28

28 U.S.C. § 1446.....................................................................................27

28 U.S.C. § 1447.............................................................................15, 27

N.C. Gen. Stat. § 1-2.............................................................................20

N.C. Gen. Stat. § 1-4.............................................................................20

N.C. Gen. Stat. § 1-5.............................................................................20

N.C. Gen. Stat. § 1-6.............................................................................20

N.C. Gen Stat. § 150B-1.......................................................................18

N.C. Gen. Stat. § 150B-51.....................................................................18

N.C. Gen. Stat. § 163-82.1.....................................................................13

N.C. Gen. Stat. § 163-82.4.....................................................................12

N.C. Gen. Stat. § 163-166.16 .................................................................13

N.C. Gen. Stat. § 163-182.14 .................................................4, 5, 7, 11

N.C. Gen. Stat. § 163-230.1 ..................................................................13

N.C. Gen. Stat. § 163-231 ......................................................................13

N.C. Gen. Stat. § 163-239 ......................................................................13

North Carolina Administrative Procedure Act..................................1, 8, 16, 18

**Other Authority**

Oral Argument,
   https://www.youtube.com/live/EwhHQiHXpno ......................................25

## Introduction

For at least three reasons, this appeal (which we will call "*Griffin II*") presents a substantially stronger case for affirmance than the consolidated appeals in case numbers 25-1018, 25-1019, and 25-1024 (which we will call collectively "*Griffin I*").

First, this appeal arises from three different petitions before a state trial court sitting in appellate review of the quasi-judicial decisions of a state agency applying the North Carolina Administrative Procedure Act. That is exactly the sort of "'complex state administrative process[]'" that lies in *Burford*'s heartland. *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 418 (4th Cir. 2013) (citation omitted). As the Supreme Court has explained, when "'a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors,'" federal intervention may "'disrupt the State's attempt to ensure uniformity.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) ("*NOPSI*"). That was certainly true as to the petition for a writ of prohibition in the Supreme Court of North Carolina in *Griffin I*. It is doubly true in this appeal, which turns on state-law questions first presented to a North Carolina agency and now under review by the specialized North Carolina trial court—the Superior Court of Wake County—statutorily

charged with a specific role in this administrative process to ensure uniformity of state election-law challenges.

Second, the district court below lacked removal jurisdiction for reasons not present in *Griffin I*. In particular, the underlying proceedings in the Superior Court of Wake County were not removable under either 28 U.S.C. §§ 1443 or 1441 because a state trial court's appellate review of a state administrative proceeding pursuant to a state administrative-law scheme is not a "civil action" as those statutes use that term. These reasons are distinct from those presented to this Court in *Griffin I* because the state-court proceedings in this appeal are different in kind than the petition for a writ of prohibition in the Supreme Court of North Carolina.

Finally, it bears emphasis that Appellants' so-called "request" remedy is even more unwarranted here than it was in *Griffin I*. North Carolina's highest court has already ordered the Superior Court "to proceed expeditiously" toward merits rulings on Judge Griffin's petitions for judicial review. *Griffin I*, Dkt. 88-2 at 4. The "request" remedy would ask the Superior Court to defy a command of the Supreme Court. And the Superior Court has already received substantial briefing and set a hearing for next week. In these circumstances, a request to return one or more of the already-remanded petitions is particularly unlikely to be welcome, or granted. Principles of federalism and comity counsel against trying to disrupt ongoing state-court proceedings expeditiously resolving important issues of North Carolina law.

For all these reasons, and those set out in Judge Griffin's briefing in *Griffin I*, the decision below should be affirmed.

## STATEMENT OF JURISDICTION

For the reasons set out below, *see infra* Section II, the district court lacked removal jurisdiction. This Court has jurisdiction to review the district court's order abstaining and remanding under 28 U.S.C. § 1291. *See Quackenbush*, 517 U.S. at 711-15.

## ISSUES PRESENTED

Like *Griffin I*, *Griffin II* presents three core issues:

1.  Whether the district court appropriately exercised its discretion when it abstained from deciding the complex questions of state law presented in these state-election proceedings.

2.  Whether the district court lacked removal jurisdiction.

3.  Whether this Court should decline to order the district court to request the return of these cases from the Superior Court of Wake County.

Consistent with this Court's briefing invitation of January 28, 2025, *see Griffin II*, Dkt. 19, Judge Griffin limits this brief to points of "distinction between" *Griffin I* and *Griffin II*.[1] Judge Griffin incorporates by reference and preserves

---

[1] Citations to "*Griffin I*, Dkt. [number]" refer to entries on this Court's docket in case number 25-1018(L), and citations to "*Griffin II*, Dkt. [number]" refer to entries on this Court's docket in this appeal, case number 25-1020.

in this appeal all of the arguments he presented in his *Griffin I* briefing and argument. *See Griffin I*, Dkt. 87. This brief addresses those issues only to the extent they involve unique considerations present in *Griffin II*. *See Griffin II*, Dkt. 19.

## STATEMENT OF THE CASE

The full factual background is set out in Judge Griffin's brief on appeal in *Griffin I.* Relevant here, *Griffin II* arises from three petitions for judicial review, which Judge Griffin timely filed in the Superior Court of Wake County on December 20, 2024, pursuant to N.C. Gen. Stat. § 163-182.14. *See Griffin II*, D.E. 1-4, D.E. 1-8, D.E. 1-12.

On December 13, 2024, the Board dismissed Judge Griffin's election protests. Pursuant to the careful procedures set out in state law, Judge Griffin then filed the three petitions for judicial review now at issue in this appeal. Each asks the Superior Court to prevent the Board from issuing a certificate of election and from counting ballots cast in violation of state law.

Specifically, the first petition asks the Superior Court to overturn the Board's denial of Judge Griffin's protest challenging ballots cast by individuals who do not meet the state constitution's residency requirement. *Id.*, D.E. 1-4. The second petition seeks judicial review of the Board's denial of Judge Griffin's protest challenging ballots cast by individuals who failed to

---

Citations to "*Griffin II*, D.E. [number]" refer to entries on the district court's docket in this case, case number 5:24-cv-731.

lawfully register to vote under state law. *Id.*, D.E. 1-8. And the third petition seeks judicial review of the Board's denial of his protest challenging ballots cast by individuals who submitted an overseas absentee ballot but failed to provide photo identification, in violation of state law. *Id.*, D.E. 1-12. Although each of Judge Griffin's petitions is a separate state-court appeal—case numbers 24CV040619-910, 24CV040620-910, and 24CV040622-910—the Board filed a single notice of removal, attempting to remove those three petitions to federal court as one action. *Id.*, D.E. 1.

That federal action was assigned to the district court below, which had also been assigned the removed petition for a writ of prohibition. Having already remanded the petition for a writ of prohibition to the Supreme Court of North Carolina, *see Griffin I*, Dkt. 49 at 301-27, the district court reasoned that its previous "conclusion operate[d] with  equal force" to the petitions for judicial review. *Griffin II*, D.E. 24. Rather than decide Judge Grifin's motions for temporary restraining orders, the district court "remand[ed] this matter to the Superior Court for Wake County." *Id.* It effectuated the remand by sending the Superior Court a letter with "a certified copy of the order of remand." *Id.*, D.E. 25 (citing 28 U.S.C. § 1447(c)).

The Board then appealed, *id.*, D.E. 26, and moved for a temporary administrative stay and a stay pending appeal, *Griffin II*, Dkt. 7. Judge Griffin opposed both motions. *Griffin II*, Dkt. 9, 18. The Court has not ruled on either of the stay motions.

5

Following the two remands, the Supreme Court of North Carolina entered an order addressing both the petition for a writ of prohibition and the petitions for judicial review. That order directed three actions relevant here. First, it "dismisse[d] the petition for writ of prohibition so that the Superior Court of Wake County may proceed with the appeals that petitioner filed in 24CV040619-910, 24CV040620-910, and 24CV040622-910." *Griffin I*, Dkt. 88-2 at 4. Second, it "ordered" the Superior Court of Wake County "to proceed expeditiously" in resolving Judge Griffin's petitions for judicial review. *Id.* Third, it maintained the status quo by prohibiting the Board from certifying the election "until the Superior Court of Wake County has ruled on petitioner's appeals and any appeals from its rulings have been exhausted." *Id.*

On January 25, 2025, the Superior Court entered case management orders in each of the appeals. Under those orders, the Superior Court has already received substantial briefing, and briefing will be completed by February 3, 2025. A hearing on each appeal will be held on February 7, 2025. *See, e.g.*, *Griffin v. N.C. State Bd. of Elecs.*, No. 24CV040619-910 (N.C. Sup. Ct.) January 25, 2025, Order at 1 (Exhibit A).

On January 27, 2025, this Court held oral argument in *Griffin I.* The next day, it granted Justice Riggs's motion to intervene in this appeal and invited all parties to file briefs by 5:00 p.m. on January 30, 2025.

Accordingly, Judge Griffin respectfully submits this brief to illustrate the "distinction[s]" separating *Griffin II* from *Griffin I*. Judge Griffin incorporates

by reference and preserves in this appeal all of the arguments he presented in his *Griffin I* briefing and argument. *See Griffin I,* Dkt. 87.

## SUMMARY OF THE ARGUMENT

**I.A.** This case presents an even stronger case for abstention than does *Griffin I.* Unlike *Griffin I, Griffin II* involves removal from and remand to a specialized trial court—the Superior Court of Wake County—to which state law commits judicial review of the Board's decisions on election protests. *See* N.C. Gen. Stat. § 163-182.14(b). North Carolina's "great care to provide for specialized adjudication" compels *Burford* abstention. *Palumbo v. Waste Techs. Indus.,* 989 F.2d 156, 159 (4th Cir. 1993). Moreover, the substance of each of the three separate petitions at issue in *Griffin II* illustrates why North Carolina's legislature crafted this careful administrative process: Each turns purely on issues of state law, and the federal interests the Board purports to raise in each do not predominate over the state interests in deciding those petitions.

**B.** None of Appellants' arguments in *Griffin I* counsel against abstention in *Griffin II.* In *Griffin I,* Appellants faulted Judge Griffin for seeking a writ of prohibition in the Supreme Court of North Carolina, rather than pursuing state administrative remedies and review in the Superior Court of Wake County. That argument is a nonstarter in this case, in which Judge Griffin has availed himself of the exact state procedures that require the sort of consistent treatment *Burford* exists to protect.

Appellants' other arguments in *Griffin I* are just as off-base here. For instance, their reliance on inapposite cases considering a different removal statute—28 U.S.C. § 1442—is unavailing because the federal officer removal statute addresses unique concerns not addressed by 28 U.S.C. § 1443. More fundamentally, those cases cannot be reconciled with later Supreme Court precedent. Nothing in *Griffin II* rehabilitates that misguided argument.

**II.A.** The remand order below should be affirmed for an alternative and independent reason: The district court lacked removal jurisdiction under both 28 U.S.C. §§ 1441(a) and 1443(2). That's because petitions for judicial review under the North Carolina Administrative Procedure Act are not "civil action[s]" as sections 1441(a) and 1443(2) use that term. In response, the Board cites *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 166 (1997). But that case is distinct from this one because it involved separate *federal* claims, unlike Judge Griffin's petitions. The Board's invocation of *Winkler v. North Carolina State Board of Plumbing*, 843 S.E.2d 207 (N.C. 2020), is similarly unavailing because the federal removal statutes do not share the capacious definition of "civil action" set out in an unrelated North Carolina statute.

**B.** Just as in *Griffin I*, section 1441(a) provides no basis for removal jurisdiction over the three separate petitions for judicial review at issue here. None of those petitions satisfies the requirements for removal of actions arising under state law as set out in *Gunn v. Minton*, 568 U.S. 251 (2013).

8

**III.** Finally, Appellants' proposed "request" remedy is even more inappropriate here than it was in *Griffin I*, because it would ask the Superior Court of Wake County to defy the order the Supreme Court of North Carolina issued in these three cases. Further, there is little practical reason to think that the Superior Court would return the case because it has already received substantial briefing, will receive additional briefing in just a few days, and it has undoubtedly invested judicial resources in preparing for the hearing it has scheduled next week to consider the petitions. Moreover, Appellants' belated argument that reversing the already-effective remand order would revive Judge Griffin's petitions for judicial review in federal court has been rejected by federal courts, *see Def. Distributed v. Platkin*, 55 F.4th 486, 493 (5th Cir. 2022), and for good reason: Such an approach would defy the "general rule" that a "case can exist only in one court at a time[,]" *United States v. Lucero*, 755 F. App'x 384, 386 (5th Cir. 2018) (per curiam).

This Court should therefore affirm the district court's remand order.

## STANDARD OF REVIEW

Because "a district court's decision to abstain" is discretionary, the Board cannot prevail without showing an "abuse of discretion." *Hennis v. Hemlick*, 666 F.3d 270, 274 (4th Cir. 2012). This standard of review is highly "deferential," *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 101 (4th Cir. 2022), and a district court's exercise of discretion is permissible "even if an appellate court

suspects that it might have ruled otherwise in the first instance," *First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002).

Whether the district court had removal jurisdiction is reviewed de novo. *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022). "The party seeking removal bears the burden of showing removal is proper." *Id.* (citation omitted). And because "removal jurisdiction raises significant federalism concerns," this Court "must strictly construe removal jurisdiction." *Id.* (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (citation omitted).

## ARGUMENT

## I.   The District Court Did Not Abuse Its Discretion When It Abstained and Remanded This Fundamentally State-Law Dispute.

This case presents an even stronger case for abstention than does *Griffin I*, for multiple reasons. Unlike *Griffin I*, *Griffin II* involves removal from and remand to a specialized trial court—the Superior Court of Wake County—charged with appellate review of a state agenecy's quasi-judicial determinations. That falls even more in the heartland of *Burford* than the Supreme Court of North Carolina proceedings at issue in *Griffin I*. And the three petitions at issue in *Griffin II* all turn on distinct questions of state law best resolved through North Carolina's careful administrative regime that assigns jurisdiction to a specialized administrative agency and appellate review by one specialized court. None of the arguments that Appellants presented against abstention in *Griffin I* carry sway in the context this appeal presents.

10

**A.** The petitions for judicial review pending in the Superior Court of Wake County belong in state court because state law commits judicial review of the Board's decisions regarding election protests to that specialized forum. *See* N.C. Gen. Stat. § 163-182.14(b). North Carolina's "great care to provide for specialized adjudication" makes the case for *Burford* abstention especially strong here. *Palumbo*, 989 F.2d at 159; *see Griffin I*, Dkt. 87 at 34-35.[2]

Moreover, the substance of each of the three separate petitions in *Griffin II* illustrates *why* North Carolina's legislature crafted this careful administrative process. In the first petition, Judge Griffin seeks review of the Board's order denying his election protest challenging ballots cast by individuals who have never resided in North Carolina. *See Griffin II*, D.E. 1-4. As explained in *Griffin I*, the requirement that individuals reside in the state to

---

[2] *Griffin II* involves three separate petitions, each addressing a single election protest, whereas *Griffin I* involved only a single petition addressing all three election protests. To be sure, the Board removed all three of those petitions into a single, consolidated federal case. *See Griffin II*, D.E. 1. Consolidated cases, however, are not "merge[d]" together; instead, they "remain as independent as before." *Capps v. Newmark S. Region, LLC*, 53 F.4th 299, 302 (4th Cir. 2022); *see Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 F. App'x 903, 906 (4th Cir. 2003) (per curiam) (unpublished). Thus, the three petitions for judicial review at issue in this appeal should be treated independently for purposes of evaluating abstention and remand. *Cf. Payne*, 75 F. App'x at 906 (holding two consolidated cases should have been evaluated "independently" for purposes of remand). In doing so, this Court should separately address the discrete federal interests that Appellants say are involved in each.

vote in state elections has been in North Carolina's constitution since 1776. *See* N.C. Const. art. VI, § 2(1); N.C. Const. of 1776 art. VIII. That requirement is untethered to any federal law. And Appellants' argument that enforcing this state-law requirement would violate the federal constitution's substantive due process doctrine does not provide a significant federal interest here. Even the "assertion of a substantial constitutional challenge" would "not alone compel the exercise of federal jurisdiction." *NOPSI*, 49 U.S. at 365. Appellants substantive-due-process argument is far from substantial; regardless, though, "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

In his second petition, Judge Griffin seeks review of the Board's decision to deny his protest challenging ballots cast by individuals who failed to properly register to vote. *See Griffin II*, D.E. 1-8. That requirement arises from the state constitution's command that only "legally registered" voters may vote in state elections, N.C. Const. art. VI, § 3(1), as well as a state statute which provides that voters must submit their driver's license or social security numbers when they register, N.C. Gen. Stat. § 163-82.4(a)(11). For the reasons explained in *Griffin I*, those state-law requirements do not incorporate federal law by reference, but instead set out their own substantive rules which are subject to independent constructions by the state's highest court. *See Griffiin I*, Dkt. 87 at 36-37. And Appellants' arguments regarding federal constitutional law fail to render federal interests predominate here for the reasons explained above.

12

In his third and final petition, Judge Griffin seeks review of the Board's denial of his protest challenging overseas absentee ballots with which individuals failed to submit a copy of their photo identification. *See Griffin II*, D.E. 1-12. That requirement is likewise untethered to federal law. *See* N.C. Gen. Stat. §§ 163-82.1(a), 163-231(b)(1), 163-230.1(a)(4), (b)(4), (e)(3), (f1), 163-166.16(a), 163-239. And Appellants' federal constitutional arguments similarly fail to raise federal interests over state interests in this petition.

In short, each of Judge Griffin's petitions illustrates the wisdom and necessity of *Burford* abstention.

**B.** None of the Appellants' arguments in *Griffin I* counsel against abstention in *Griffin II*.

As an initial matter, Appellants in *Griffin I* faulted Judge Griffin for seeking a writ of prohibition in the Supreme Court of North Carolina, rather than pursuing state administrative remedies and review in the Superior Court of Wake County. *Griffin I*, Dkt. 50 at 33; *id.*, Dkt. 52 at 49. According to Appellants, abstention is not proper in those circumstances because the petition for a writ of prohibition "fors[ook] the advantages of [a] single state forum." *Id.*, Dkt. 52 at 49. That argument was unpersuasive in *Griffin I*, *see id.*, Dkt. 87 at 35 n.2, but it is a nonstarter in this case, in which Judge Griffin has availed himself of the exact state procedures that require the sort of consistent treatment *Burford* exists to protect.

Appellants' other arguments in *Griffin I* are just as off-base here. For example, they have asserted, in reliance on inapposite cases considering a

13

different statute, that *Burford* abstention is not available in cases removed under section 1443. *Cf. Griffin I*, Dkt. 52 at 43 (citing *Jamison v. Wiley*, 14 F.3d 222 (4th Cir. 1994); *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989)).

Appellants misread the law. *Jamison* and *Kolibash* involved cases under the federal officer removal statute, section 1442. That statute addresses the unique "federal interest in protecting federal officials in the performance of their federal duties," and Congress's decision that "federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Kolibash*, 872 F.2d at 574-75 (citation omitted); *see also id.* at 573-74 (noting that section 1442 was passed as part of an act designed to "prevent 'paralysis' of federal operations" by protecting federal officers from "state court prosecutions for violations of state law.").

Section 1443 does not address those same concerns. Instead, Appellants assert that section 1443 is designed to insulate certain categories of cases from "local passions," Dkt. 51 at 14, a concern virtually indistinguishable from that served by section 1441, for instance. *See Chicago & N.W.R. Co. v. Whitton*, 80 U.S. 270, 289 (1871) (explaining that the purpose of allowing removal under section 1441 is to provide a neutral federal forum for defendants who might face local "prejudices"). And courts regularly abstain in cases removed under section 1441. *See, e.g., Johnson v. Collins Entm't Co.*, 199 F.3d 710, 729 (4th Cir. 1999).

14

More fundamentally, to the extent *Jamison* and *Kolibash* apply to *Burford* cases, their rule cannot be reconciled with the Supreme Court's later opinion in *Quackenbush*. In both cases, this Court concluded remand was inappropriate because "a district court has no authority to abstain from the exercise of that jurisdiction on any ground other than the two specified in 1447(c)." *Jamison*, 14 F.3d at 239; *accord Kolibash*, 872 F.2d at 573. Taken at face value, those statements would preclude any form of abstention because abstention has its origin "in the historic discretion exercised by federal courts 'sitting in equity,'" not section 1447(c). *Quackenbush*, 517 U.S. at 718 (citation omitted). Nevertheless, the Supreme Court has "extended the doctrine [of abstention] to *all cases* in which a federal court is asked to provide some form of discretionary relief." *Id.* at 730 (emphasis added). Appellants effort to establish a *per se* rule depriving the district court of discretion to consider *Burford* abstention is no more consistent with Supreme Court precedent than the Ninth Circuit's "*per se* rule" that was rejected in *Quackenbush*. *Id.*

Nothing about *Griffin II* rehabilitates Appellants' misguided *Griffin I* arguments. Indeed, the petitions for judicial review underlying *Griffin II* seek exactly the type of "discretionary" relief that the *Quackenbush* Court explained trigger abstention. *Compare Quackenbush*, 517 U.S. at 718 ("the abstention doctrines" apply to, *inter alia*, "suits for injunctive relief"), *with Griffin II*, D.E. 1-4 (requesting a TRO, an injunction, and other relief "the Court deems appropriate"); *id.*, D.E. 1-8 (same); *id.*, D.E. 1-12 (same). The proper course is to allow North Carolina's "complex administrative system,"

15

*Quackenbush*, 517 U.S. at 725, to consider that discretionary relief consistent with state law and the state's compelling interest in uniform application of its election laws.

## II.   The District Court Lacked Removal Jurisdiction.

The remand order below should be affirmed for an alternative and independent reason: The district court lacked removal jurisdiction. *See United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) (this Court is "entitled to affirm on any ground appearing in the record"(citation omitted)). Although this issue is mostly covered by Judge Griffin's previous briefing, *see Griffin I*, Dkt. 87 at 44-55, two arguments require analysis tailored to the petitions for judicial review.

First, a petition for judicial review under the North Carolina Administrative Procedure Act is not a "civil action" as sections 1443(2) and 1441 use that term. Second, regardless of how the Court reads the petition for a writ of prohibition, none of Judge Griffin's petitions for judicial review supports removal jurisdiction under section 1441.

### A.   Judge Griffin's petitions for judicial review could not be removed because they are not "civil action[s]."

Judge Griffin's petitions for judicial review cannot support removal jurisdiction because they are not "civil actions" under sections 1443 and 1441. Binding precedent forecloses removal of these state administrative appeals to federal district court.

16

**1.** In *Fairfax County Redevelopment & Housing Authority v. W.M. Schlosser Co.*, a "state administrative" proceeding was appealed "to a Virginia circuit court" under state law but then "removed . . . to federal district court" under section 1441. 64 F.3d 155, 156 (4th Cir. 1995). Rejecting removal, this Court ordered the district court to "remand the case to Virginia Circuit Court, which properly has jurisdiction over the appeal." *Id.* at 158. The Court applied binding precedent holding "that federal district courts may not review on appeal the state law findings of a state agency." *Id.* at 159. It expressly rejected the dissent's reasoning that "appeals from state agencies are 'civil actions' that are within a federal district court's diversity jurisdiction." *Id.* Although "a *de novo* proceeding" could qualify as "a civil action," "a *review* by the district court of the state agency's" ruling did not. *Id.* at 157 n.1.

The distinction between *de novo* proceedings and review on an administrative record is crucial to how courts identify "civil actions." For example, in *Matherly v. Las Vegas Valley Water District*, the court held that review of a state agency's action under the Nevada Administrative Procedure Act "was not a civil action for removal purposes" for two reasons. 926 F. Supp. 990, 993-94 (D. Nev. 1996). First, "the judicial review provisions of the Nevada APA do not allow for a trial *de novo*, but instead require that the proceedings are confined to the administrative record." *Id.* Second the Nevada APA "does not allow the reviewing court to substitute its judgment on the weight of the evidence for that of the agency." *Id.* at 994.

Those same reasons apply here. Judge Griffin's petitions for judicial review are being considered under the North Carolina Administrative Procedure Act. *See* N.C. Gen Stat. § 150B-1(c). "In reviewing the agency's decision, the superior court applies the 'whole record' test, which requires the examination of all competent evidence to determine if the administrative agency's decision is supported by substantial evidence." *Rector v. N.C. Sheriffs' Educ. & Training Standards Comm'n*, 406 S.E.2d 613, 616 (N.C. App. 1991) (citation omitted). This requires consideration of the evidence before the agency, not new evidence adduced in *de novo* court proceedings. *See, e.g.*, *Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Com'rs of Town of Nags Head*, 265 S.E.2d 379, 383 (N.C. 1980) ("The trial court does not review the sufficiency of evidence presented to it but reviews that evidence presented to the town board."). "[I]n its role as an appellate court, the superior court reviews the agency's decision but is not allowed to replace the agency's judgment with its own when there are two reasonably conflicting views, even though the court could have reached a different result upon de novo review." *Rector*, 406 S.E.2d at 617.[3]

---

[3] Of course, legal issues are reviewed *de novo*, *see* N.C. Gen. Stat. § 150B-51(c), but that common feature of judicial review of agency actions does not alter the nature of the administrative appeal for removal purposes. *See W.M. Schlosser Co.*, 64 F.3d at 158 (holding "that a review procedure under which factual findings are conclusive unless found to be fraudulent, arbitrary or capricious, or so grossly erroneous as to imply bad faith" could not "be fairly characterized as a *de novo* trial" even though the Virginia statute did not provide the same deference "on an issue of law").

This would not be the first court to recognize that administrative appeals under the North Carolina APA should be remanded to the state Superior Court. In *Phillips v. North Carolina A&T State University*, the district court recognized this Circuit's rule that "it is improper for a federal district court to hear appellate reviews of state administrative decisions that are not *de novo* trial proceedings." No. 1:09-cv-227, 2009 WL 5215377, at *5 (M.D.N.C. Dec. 28, 2009) (citing *W.M. Schlosser Co.*, 64 F.3d at 156-57 and *Frison v. Franklin Cnty. Bd. of Educ.*, 596 F.2d 1192, 1194 (4th Cir. 1979)). Applying that rule, it concluded that the North Carolina APA "requires reviewing courts to undertake appellate, rather than de novo, action." *Id.* at *6. The district court therefore "remand[ed] Plaintiff's Petition for judicial review to state court." *Id.*

**2.** The Board's briefing raises two primary arguments to claim that Judge Griffin's petitions for judicial review are "civil actions." *Griffin II*, Dkt. 25 at 5-6. Each is wrong. First, the Board invokes, *International College of Surgeons*, 522 U.S. at 166. That case recognized that when cases contain separate federal claims, "[t]hose federal claims suffice to make the actions 'civil actions' within the 'original jurisdiction' of the district courts for purposes of removal." *Id.* In those situations, a federal district court may then be able to exercise supplemental jurisdiction over a state-law claim for review of agency action. *See id.* at 168-69. But that does not make the state-law agency appeals themselves "civil actions." The Supreme Court did not decide "whether . . . state claims for on-the-record review of [an agency's] decisions

are 'civil actions' within the 'original jurisdiction' of a district court," *id.* at 166, much less displace the binding Fourth Circuit precedent that answers that question in the negative, *see, e.g., W.M. Schlosser Co.* 64 F.3d at 159.

Thus, this case is controlled by *W.M. Schlosser Co.*, not *International College of Surgeons*. *International College of Surgeons* does not address cases, like this one, in which no one has brought any federal claims and supplemental jurisdiction is not at issue. That is why this Court continues to treat *W.M. Schlosser Co.* as good law. *See Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 386-87 & n.6 (4th Cir. 2000) (relying on *W.M. Schlosser Co.* and describing *International College of Surgeons* as "merely hold[ing] that district courts can exercise supplemental jurisdiction over state claims that call for deferential on-the-record review of state administrative findings when the district court already possesses original jurisdiction over another claim").

Second, the Board invokes *Winkler*, which interpreted a state attorney's-fees statute by relying on a state statute's definition of "action." 843 S.E.2d at 210-12 (citing N.C. Gen. Stat. §§ 1-2, 6-19.1(a)). *Winkler* is irrelevant because the federal removal statutes do not share the North Carolina's statute's capacious definition of "civil action." *Compare W.M. Schlosser Co.*, 64 F.3d at 159 (rejecting the argument that "*Stude* was incorrectly decided because appeals from state agencies are 'civil actions' that are within a federal district court's diversity jurisdiction"), *with* N.C. Gen. Stat. § 1-2 (defining "action" broadly), and N.C. Gen. Stat. §§ 1-4, 1-5, 1-6 (defining all non-criminal actions as civil actions).

20

In short, because none of Judge Griffin's petitions for judicial review is a "civil action," none is removable under sections 1443 or 1441. The judgment below can be affirmed on this alternative basis.

## B.  Section 1441 does not support removal jurisdiction.

As Judge Griffin explained in his *Griffin I* briefing, the district court correctly rejected removal jurisdiction under section 1441 because (among other reasons) Judge Griffin's state-law claims do not incorporate a federal question under the well-pleaded complaint rule. *See Griffin I*, Dkt. 87 at 49-55. If the Court agrees with that analysis, then it should likewise reject removal jurisdiction under section 1441 over all three of the petitions for judicial review because the petition for a writ of prohibition effectively combined the theories underlying each of the petitions for judicial review.

Even if the Court believes that the petition for a writ of prohibition contains a federal question, however, it should analyze the petitions for judicial review individually. After all, the petition for a writ of prohibition is not part of this appeal; the three petitions for judicial review are. Considered individually, none of Judge Griffin's petitions for judicial review raises a federal question.

## 1.  Never Residents.

As an initial matter, and as the district court noted, no party argued that Judge Griffin's challenge regarding the residence requirement involved any federal statute. *Griffin I*, Dkt. 49 at JA315–16 ("No party (including the State

Board, Riggs, the NCARA parties, or amici) have argued that Griffin's [never resident] challenge involves an issue of federal law, and the court discerns none."). As such, this challenge does not necessarily raise a federal issue, and any argument to the contrary has been forfeited by opposing counsel. *See, e.g.*, *United States v. Simms*, 914 F.3d 229, 238 n.4 (4th Cir. 2019) (en banc) (noting that a party forfeits an argument by failing to raise it before the district court); *see also United States v. Olano*, 507 U.S. 725, 733 (1993).

Moreover, it is clear that Judge Griffin's petition for judicial review challenges the Board's order on state-law grounds. The petition is based on Judge Griffin's position that "[t]he North Carolina Constitution requires a person to be a bona fide resident of North Carolina when they vote for state offices." *Griffin II*, D.E. 1-4 at 5. The petition also rebuts an anticipated federal defense based on "procedural due process," *id.* at 7, but the actual relief sought is to prevent the Board from violating state law, *see Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.").

### 2.   Incomplete Voter Registrations.

Judge Griffin's petition for judicial review regarding incomplete voter registrations is not based on federal law either. The petition is based on what "[s]tate law requires a person to" do "before becoming lawfully registered to vote." *Griffin II*, D.E. 1-8 at 5. Though the petition rebuts anticipated federal defenses based on "procedural due process" and a federal statute, *id.* at 6-7, the actual relief sought is to prevent the Board from violating state law. *See Franchise Tax Bd.*, 463 U.S. at 14.

### 3.   Lack of Photo Identification for Overseas Voters.

Judge Griffin's petition for judicial review regarding "overseas absentee voters who did not include photo identification with their ballots" is likewise based on state law. *Griffin II*, D.E. 1-12 at 5. It alleges that "[i]n-person voters and absentee-mail voters were required by the state constitution and statutes to provide photo identification with their chosen method of voting." *Id.* at 5. It further alleges that "[n]othing in state law . . . excepts overseas absentee voters from the photo identification requirement." *Id.* Again, the petition rebuts anticipated federal defenses based on "procedural due process" and a federal statute applicable "only to federal elections," *id.* at 6-7, but the actual relief sought is to prevent the Board from violating state law, *see Franchise Tax Bd.*, 463 U.S. at 14.

23

\*   \*   \*

Whether the district court properly abstained, or whether it lacked removal jurisdiction in the first place, the outcome is the same: This case properly belongs in the Superior Court of Wake County.

## III. The Court Should Decline to Order the District Court to "Request" the Return of These Cases from the Superior Court of Wake County.

Even if Appellants prevailed in this appeal, the only potentially available remedy would be for this Court to order the district court to request "the state court's cooperation" in returning the case. *Forty Six Hundred LLC v. Cadence Educ.*, 15 F.4th 70, 81 (1st Cir. 2021). That is because federal courts lack "any formal procedural mechanism for the retrieval of a removed case erroneously returned to a state court." *Id.* at 80.

That is the limit of the relief Appellants sought in *Griffin I. See Griffin I*, Dkt. 51 at 26 (citing *Cadence*, 15 F.4th at 78, 81); *id.*, Dkt 52 at 50 (citing *Cadence*, 15 F.4th at 79, 81). Having represented to the Court that this appeal is "the same" as that previous appeal and that they would "stand on [their previously filed] briefs," they cannot now contend they are entitled to broader relief in *Griffin II*.[4] And the Board's briefing in this appeal omits any discussion of remedial issues. *See Griffin II*, Dkt. 25.

---

[4] "[Y]ou would also say these are functionally the same, and you would stand on your briefs and say, I don't need to argue anything else. Correct?

On the facts and posture of *Griffin II*, however, that "request" remedy is a nonstarter. There is virtually no possibility that the Superior Court would voluntarily "return" the case because the Superior Court has been ordered by its own Supreme Court "to proceed expeditiously" and "rule[]" on Judge Griffin's petitions for judicial review. *Griffin I*, Dkt. 88-2 at 4. To grant a "request" from a federal trial court would defy the Supreme Court of North Carolina's directive. *See id*. The better course is to decline to make any such request in the first place and avoid, in the name of comity and good faith, putting a state trial court to the choice whether to flout the orders of its own Supreme Court by granting a nonmandatory request from a different sovereign. This Court has "remedial discretion" to "decline to grant this remedy" where "[t]he likelihood of . . . providing any practical benefit to [Appellants] is remote." *United States v. Sastrom*, 96 F.4th 33, 40 (1st Cir. 2024). It should so decline here.

Even if the Superior Court could somehow defy the Supreme Court's order, there is little practical reason to think it would voluntarily return this case. The Superior Court has already received substantial briefing, with more briefing to arrive in a few days. *See, e.g.*, Ex. A at 1. And it has set (and undoubtedly invested judicial resources in preparing for) a hearing next week. *See id.*

---

Yes, yes, that's right. That's right." Oral Argument 17:07-17:17, https://www.youtube.com/live/EwhHQiHXpno.

Finally, to the extent any Appellant now seeks to belatedly argue that overturning the already-effective remand order in *Griffin II* would revive Judge Griffin's petitions for judicial review in federal court, that is wrong. *Defense Distributed* illustrates why. *See generally Griffin I*, Dkt. 87 at 58-59.

*Defense Distributed* featured an erroneous, but effectuated, transfer order that sent pending claims to another district court in another circuit. *See id*. Although the Fifth Circuit had "order[ed] the district court to vacate its ruling and to request the transferee court to return the case," "the New Jersey transferee court" nevertheless "refused." *Def. Distributed*, 55 F.4th at 491. The appellate court concluded it was powerless: "Although this court has politely requested that the New Jersey district court return the case, we can do no more. That case exists in New Jersey . . . ." *Id.* at 493.

In response to these problems, the *Defense Distributed* plaintiffs argued that "the entry of the order vacating the district court's sever-and-transfer order automatically revived plaintiffs' claims . . . in the Fifth Circuit." *Id.* at 491. The court rejected "plaintiffs' novel revival theory" because the "court cannot reconstitute claims that exist elsewhere." *Id.* at 493.

That approach is in keeping with "[t]he general rule is that a case can exist only in one court at a time . . . ." *Lucero*, 755 F. App'x at 386; *accord United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008) ("Only one court at a time has jurisdiction over a subject."). The federal removal statutes likewise recognize that only one court should have jurisdiction over case at a time. On the front end, as soon as a removal is "effect[ed]," Congress

provided that "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). And on the back end, as soon as "[a] certified copy of the order of remand" is "mailed by the [federal] clerk to the clerk of the State court," "[t]he State court may . . . proceed with [the remanded] case." *Id.* § 1447(c). Nothing in the congressionally enacted scheme contemplates federal and state courts purporting to exercise jurisdiction over the merits of the same case at the same time.

The problems inherent in having two courts simultaneously consider the same case are well known to federal courts. In the federal system, it is "generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). In light of the federalism concerns applicable when a case has already been remanded to a state court, a federal district court should be especially reluctant to assert jurisdiction over a case that a state court is already asserting jurisdiction over.[5]

---

[5] The existence of a statute authorizing appellate review of the remand order does not change the analysis. Even when an appellant is pursuing a statutorily authorized appeal, this Court will not claim jurisdiction to undo an already-effective transfer order. *See In re Martin*, 861 F.2d 265, 1988 WL 109303, at *1 (4th Cir. 1988) (table) (per curiam) ("The records in the case have already been forwarded to the District of Delaware. Thus, we would have no jurisdiction to review the transfer order even if the district court certified an interlocutory appeal.").

Summed up, Appellants' "request" remedy is the outermost limit of this Court's authority—and it is a nonstarter in the procedural posture this appeal presents.

## CONCLUSION

This Court should affirm the district court's decision to abstain and remand because the district court did not abuse its discretion. Alternatively, this Court should affirm because the district court lacked removal jurisdiction under 28 U.S.C. §§ 1443 and 1441. In any event, the Court cannot order the Superior Court of Wake County to return the cases, and it should decline to direct the district court to seek such a return voluntarily.

Respectfully submitted.

/s/ William T. Thompson

Mark M. Rothrock
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
(336) 416-3326
mark@lkcfirm.com

William T. Thompson
  *Counsel of Record*
Kyle D. Hawkins
LEHOTSKY KELLER COHN LLP
408 W. 11st Street, 5th Floor
Austin, TX 78701
(512) 693-8350
will@lkcfirm.com

*Counsel for Petitioner-Appellee*

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitations in this Court's Local Rules and the Federal Rules of Appellate Procedure because it contains 6,921 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface: 14-point Palatino Linotype font.

Dated: January 30, 2025

/s/ *William T. Thompson*

William T. Thompson

## CERTIFICATE OF SERVICE

I certify that on January 30, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ William T. Thompson*
William T. Thompson